ISRAEL CANNON, APPELLEE, V. ALF CANFIELD, APPEL-
LANT.

Promissory Note: CONSIDERATION. The mere fact that one
purchases a negotiable promissory note before maturity, for
about one-half the face value, there being evidence tending to
show that he did not regard the note as good (collectible),
and no evidence showing it to be worth more, is not sufficient
to put the purchaser on inquiry as to the consideration.

APPEAL from Johnson county. Tried below before
WEAVER, J.

. T. Appelget & Son, for appellants. If the note is reg-
ular commercial negotiable paper, fraudulent represen-
tations made to obtain it will not vitiate in the hands
of a bona fide purchaser before due for value. Edwards
on promissory notes, p. 325. Davis v. Bartlett et al., 12
Ohio State, 537. Wortendyke v Meehan, 9 Neb., 229. If
the transferrer of negotiable paper before due show that
he paid value for it, the burden of proof is on the party
seeking to defeat its collection, to show that he—the
transferee—knew that the note was illegally obtained
from the maker. Id. The fact that the defendant pur-
chased the note for less than its face, is no ground for
suspicion. Bailey v. Smith, 14 Ohio State, 396. All
that is necessary is that the defendant should have paid
all that the note, under all the circumstances, was rea-
sonably worth. Id.

Davidson & Easterday and V. D. Metcalfe, for appel-
lee, cited Paton v. Coit, 5 Mich., 510. Wortengdyke v.
Meehan, 9 Neb., 229. Bateman on Common Law, secs.
296, 334.

MAXWELL, CH. J.

This is an action enjoining the defendant from trans-
ferring a certain promissory note executed by the plain-

tiff, and to have the same delivered up and cancelled. A decree was rendered in favor of the plaintiff in the court below. The defendant appeals to this court. The note is as follows:

"$100.00.

"TECUMSEH, Johnson County, Nov. 6th, 1879.

"One year after date I promise to pay the treasurer of the Nebraska Iron Fence Co. of Nebraska City, Nebraska, or bearer, the sum of one hundred dollars, at State Bank of Nebraska, Seward, Nebraska, value received, with interest at ten per cent per annum from date. Reasonable attorney fee if suit be instituted on this note.                "ISRAEL CANNON."

"P. O. ———. The maker of this note lives on No. —, sec. 31, tp. 6, r. 12, name by agent I. Cannon; residence 9 miles from Tecumseh, north-east."

The note was given for a share in stock, of which the following is a copy:

"No. 328. Authorized Capital (shares $100 each. Full paid up stock $100), $1,000,000.

"State of Nebraska,—Otoe County.

"This is to certify that I. Cannon is entitled to one share of one hundred dollars each, of the capital stock of the NEBRASKA IRON FENCE COMPANY, incorporated under the laws of the State of Nebraska, and transferable only on the books of the company on surrender of this certificate properly endorsed. Persons purchasing stock in this company please notify the secretary at once.

"W. B. PERSHING, Secretary.

"NEBRASKA CITY, Nebraska, Nov. 6th, 1879."

On the back of the certificate is the following:

"This certificate of stock entitles the holder thereof to all the iron fence at wholesale prices that he may need for his own use, and that is manufactured and

kept for sale by the company, and to receive all dividends that may be declared in posts or wire at wholesale prices of same when posts and wire are ordered together for the first year, or until the company shall find that cash dividends may be declared.

"NEBRASKA IRON FENCE COMPANY."

On a blank appointment of the plaintiff as agent of the Nebraska Iron Fence Company, is the following:

"TECUMSEH, Nov. 6, 1879.   It is hereby agreed between the Neb. Iron Fence Co. and I. Cannon, that if after reasonable time, said I. Cannon does not sell enough certificates and iron fence to the amount of $100.00, after using due diligence, then the Neb. Iron Fence Co. upon the receipt of I. Cannon's papers, will return him his.         "C. N. RAND, Gen. Agt."

The note in question was made and delivered to Rand, and by him on the same day sold and delivered to the defendant, who claims to be a *bona fide* purchaser without notice.

There is testimony tending to show that no such corporation as the Nebraska Iron Fence Company ever existed at Nebraska City, that the stock is worthless, and that the plaintiff has received no consideration for the note.   But these facts do not seem to have been known even by the plaintiff himself at the time the defendant purchased the note.

The plaintiff testified on rebuttal, as follows:

Q.   How soon did you have a conversation with the defendant after you signed this note?

A.   Well, sir, I cannot exactly tell the date.

Q.   About how long?

A.   It did not seem to me it was but a very few days.   I don't think it could have been over a week.

Q.   Is it your judgment that it was less than a week?

A.   It did not seem to be over four days, because I had iron fence on the brain about that time.

This conversation took place after the defendant had purchased the note, and even if the defendant had then been notified of the want of consideration would not have been available against a *bona fide* purchaser. But the testimony tends to show that at that time the plaintiff regarded the consideration as entirely satisfactory.

It is claimed that the price paid by the defendant for the note in question being much below the face value thereof was sufficient to put him on inquiry as to the consideration.   The amount paid for a promissory note may become a material inquiry in determining whether a purchaser obtained the same in good faith or not.   As should a collectible promissory note for $100.00 be offered for $25.00 or $50.00, or any sum entirely disproportionate to its value, it is a circumstance and in certain cases may be sufficient to arouse suspicion and put the purchaser on inquiry.

The testimony shows that the price paid by the defendant for the note in controversy was about the sum of $50.00.   This of itself might be ground of suspicion.   But the defendant testifies that he did not regard the note as good (collectible), and for that reason he did not want to purchase it, and there is no testimony tending to show that the plaintiff was able to pay his debts.   For aught that appears the defendant may have paid more for the note than can be collected thereon.   It is evident that the plaintiff was induced to give the note in question through false representations made by Rand, who claimed to be the agent of the Nebraska Iron Fence Co., and there seems to be good cause to indict Rand under the statute against obtaining property by false pretenses. But the testimony shows that the defendant purchased

the note in controversy before maturity for a fair value, and without notice of any defense to the same.

The injunction is therefore dissolved, and the action dismissed.

JUDGMENT ACCORDINGLY.